UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. FRANKOVICH, | Case No. 25-cv-01015-LJC |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS WITHOUT PREJUDICE** |
| THOMAS VARIN, et al., | Re: Dkt. No. 36 |
| Defendants. | |

Defendant Thomas Varin (Mr. Varin) moved to dismiss Plaintiff Thomas Frankovich's state law claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 36. Plaintiff opposed the motion and Mr. Varin did not file a reply brief by the applicable deadline. ECF No. 28; Civil L.R. 7-3(c).  The Court determined that oral argument is not necessary.  Civil L.R. 7-1(b).  Having considered the parties' arguments, the record in this case, and the applicable legal authority, the Court DENIES Mr. Varin's motion.

## I.      BACKGROUND

Plaintiff sued Mr. Varin and Marian Varin in January 2025, alleging that they discriminated against Plaintiff on the basis of disability by failing to remove various structural barriers from Mr. Varin's dental office.  ECF No. 1.  Plaintiff asserted claims for disability discrimination under the Americans with Disabilities Act (ADA) and state antidiscrimination laws.  *Id.* ¶¶ 29-53.

Plaintiff then amended his complaint, adding Adrienne Varin as a defendant.  ECF No. 14 (First Am. Compl.) (FAC).  In the FAC, Plaintiff alleges that he is disabled and, among other things, relies on a "walking stick and occasionally a walker to travel about in public." *Id.* ¶ 6.  He alleges that Defendants own the real property located at 1531 5th Avenue, San Rafael, California and jointly own and operate the Thomas Varin Dental Office (the Dental Office), located at the

United States District Court
Northern District of California

San Rafael address. *Id.* ¶¶ 8-9. Plaintiff alleges that on or about February 7, 2023 and March 14, 2023, he "was an invitee and guest at the" Dental Office "for purposes of dental work," and encountered the following "architectural barriers": (1) the exterior handrail was too low and did not have returns, which made it "difficult for Plaintiff to ascend and descend the stairs" and caused Plaintiff anxiety; (2) the door threshold was too high, and Plaintiff feared he would trip and fall while entering or exiting the Dental Office; and (3) "[o]n information and belief," the bathroom lacked accessible features, which made it difficult for Plaintiff to use. *Id.* ¶ 17. Plaintiff returned to the Dental Office on May 31, 2024 and January 2024, and encountered the same architectural barriers. *Id.* ¶¶ 18-19. Plaintiff alleges that he told Mr. Varin and an individual named Francesca about these problems, and explains that until these "physical barriers to access" are modified, he will "continue to be denied full and equal access to the goods and services offered by Defendants to the general public." *Id.* ¶ 24.

As in his original complaint, the FAC asserts claims under Title III of the ADA, which prohibits disability discrimination by any person who owns or operates a place of "public accommodation," and under state antidiscrimination laws. *Id.* ¶ 32-33, 36. Plaintiff asserts that Defendants violated California Civil Code § 51(b), the Unruh Civil Rights Act (Unruh Act), which prohibits business establishments from discriminating against individuals based on, among other things, their disability or medical condition. *Id.* ¶¶ 39, 42. Pursuant to the Unruh Act, Plaintiff seeks $4,000 "for each event of discrimination and for each time Plaintiff has been deterred from returning to the business." *Id.* ¶ 45. Plaintiff also asserts that Defendants violated California Health and Safety Code § 19955 by failing to construct or remodel the Dental Office in compliance with accessibility laws. *Id.* ¶¶ 47-49. Defendants Thomas Varin and Marian Varin filed their Answers (*see* ECF No. 15, 22), and Defendant Marian Varin was dismissed from the lawsuit. ECF No. 28. The case was then referred to mediation, which was held on February 12, 2026. ECF Nos. 32, 34. It did not settle. ECF No. 34.

Mr. Varin then filed his motion to dismiss Plaintiff's state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), urging the Court to decline to exercise supplemental jurisdiction over these claims. ECF No. 36. Plaintiff opposed. ECF No. 38. The

2

Court issued an Order to Show Cause why Mr. Varin's motion to dismiss[1] should not be denied on procedural grounds, as Mr. Varin has already filed an answer. *See* Fed. R. Civ. P. 12(b). Mr. Varin responded. ECF No. 41.

## II.  RESPONSE TO ORDER TO SHOW CAUSE

As noted above, Mr. Varin filed a response to the Court's Order to show cause, disagreeing with the Court's interpretation of the law and explaining that "Rule 12(b)(1) allows a defendant to seek dismissal of a claim or lawsuit at any time during the litigation by asserting the defense of lack of subject matter jurisdiction." ECF No. 41 at 1. The Court agrees and accordingly discharges the Order to Show Cause. "[A] court may raise the question of subject matter jurisdiction, *sua sponte,* at any time during the pendency of the action, even on appeal." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) (quoting *Snell v. Cleveland, Inc.,* 316 F.3d 822, 826 (9th Cir. 2002)). Although Rule 12(b) provides that motions to dismiss "must be made before pleading if a responsive pleading is allowed," "the deadline for making a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is prolonged by Rule 12(h)(3), which provides that '[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (quoting Fed. R. Civ. P. 12(h)(3)). The Court accordingly addresses the merits of Mr. Varin's motion.

## III.  ANALYSIS

### A.  Legal Standard

Federal courts are courts of limited jurisdiction and may only hear cases that they have jurisdiction over, typically through federal question jurisdiction or diversity jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts may also exercise supplemental jurisdiction over related claims. *See* 28 U.S.C. § 1367. In relevant part (and subject to certain exceptions), 28 U.S.C. § 1367 provides:

> [I]n any civil action of which the district courts have original

---

[1] Though the Order to Show Cause directed "Defendants," to respond, *see* ECF No. 40, given that the motion to dismiss was filed by Mr. Varin only, only he is required to respond to the Order to Show Cause. The Order to Show Cause is so amended.

United States District Court
Northern District of California

jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Thus, if a court has federal question jurisdiction over one claim in a case because the claim arises "under the Constitution, laws, or treaties of the United States," the court may exercise supplemental jurisdiction over related state-law claims, as long as those claims are "part of the same case or controversy" as the claim arising out of a federal question. *Id.*; 28 U.S.C. § 1331. However, courts are not obligated to exercise supplemental jurisdiction over a claim, and may decline to do so if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

In deciding whether to decline to exercise supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(c)(4), courts first evaluate if state law claims are related to federal claims. In determining relatedness, courts evaluate if the state claim and federal claim "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in own judicial proceeding," such that they form part of the same "case or controversy" under 28 U.S.C. § 1367(a). *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (internal citations and quotation marks omitted). If the court determines that the claims are part of the same "case or controversy," the court then undertakes a two-step inquiry. First, the court must evaluate "why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Arroyo v. Rosas*, 19 F.4th 1202, 1210 (9th Cir. 2021) (internal quotations omitted). If the court finds that exceptional circumstances are present, it must then determine if "there are compelling reasons for declining jurisdiction in a given case," considering "what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine" as articulated in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966). *Id.* at 1210-11 (internal

United States District Court
Northern District of California

quotations omitted).

### B.    Supplemental Jurisdiction over Plaintiff's State Law Claim

The Court has federal question jurisdiction over Plaintiff's ADA Claim. *See* FAC ¶ 4; 29 U.S.C. § 1331. Plaintiff alleges that the Court must exercise supplemental jurisdiction over his state law claims, as they arise from "from the same nucleus of operative facts" and transactions as his ADA claim. FAC ¶ 4. Mr. Varin argues that the Court should decline to do so, as there are "exceptional circumstances" and "compelling reasons" pursuant to 28 U.S.C. § 1367(c)(4) that weigh against exercising supplemental jurisdiction over Unruh Act claims. ECF No. 36 at 4.

Here, there is no dispute that Plaintiff's ADA and state-law claims are "part of the same case or controversy" as they arise from the same operative facts: Plaintiff's visits to the Dental Office and the alleged barriers he encountered there. 28 U.S.C. § 1367(a); *see* FAC ¶¶ 13-25.

Next, the Court evaluates if "exceptional circumstances" under 28 U.S.C. § 1367(c)(4) are present. Mr. Varin argues that a litigant asserting "a California Unruh Act claim in federal court with an ADA claim" constitutes "an exceptional circumstance that justifies dismissal of the Unruh Act claim." *Id.* at 36. The Court disagrees. Mr. Varin's argument is rooted in the interplay between federal and state anti-discrimination laws and the California legislature's attempts to curb perceived abuses of the Unruh Act. In relevant part, the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Similarly, California's Unruh Act prohibits the denial of "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" based on, among other protected categories, disability. Cal. Civ. Code § 51(b). A violation of Title III of the ADA constitutes a violation of the Unruh Act at § 51(b). While the two laws prohibit similar conduct, they differ considerably when it comes to remedies. "Section 308(a) of the ADA provides a private cause of action to enforce [the] prohibition [at 42 U.S.C. § 12182(a)], but it limits the available relief to the remedies set forth in § 204 of the Civil Rights Act of 1964, namely, preventive relief, including . . . a permanent or

5

United States District Court
Northern District of California

temporary injunction." *Arroyo*, 19 F.4th at 1205-06 (internal quotations omitted).  While the Unruh Act also provides for a private cause of action and injunctive relief, it also permits "injured persons to recover actual damages, as well as any amount that may be determined by a jury . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." *Id.* at 1206 (internal quotations omitted).  "Because, as noted, every violation of the ADA in California is automatically a violation of the Unruh Act, the net practical consequence is to create a state law cause of action that permits, for California-based ADA claims, a damages remedy that is not available under the ADA." *Id.*

The California Legislature became concerned about "a very small number of plaintiffs' attorneys" using the Unruh Act to obtain quick cash settlements from businesses, and, in 2012, enacted new provisions with respect to construction-related accessibility claims generally prohibiting "up-front requests for money in pre-litigation demand letters sent by attorneys to business owners" and imposing "heightened pleading requirements" on such claims.  *Id.* (internal quotations omitted); *see* Cal. Civ. Code § 55.31(b); Cal. Civ. Proc. Code § 425.50(a) (2013).  The California Legislature imposed additional procedural requirements in 2015 to address perceived abuses by "high frequency litigants," where "high frequency litigant" was defined as a "plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." *Id.* at 1207; Cal. Civ. Proc. Code § 425.55(b).  These additional procedural requirements required high-frequency litigants to disclose "(1) that the plaintiff is a high-frequency litigant; (2) how many complaints the plaintiff has filed in the prior 12 months; (3) the reason the plaintiff was in the geographic area of the defendant's business; . . . (4) why the plaintiff desired to access the defendant's business," and pay an additional $1,000 filing fee.  *Arroyo*, 19 F.4th at 1207 (internal quotations omitted).

To avoid these additional procedural requirements, high-frequency plaintiffs asserting construction-related accessibility claims began to increasingly pair Unruh Act claims "with a parallel federal ADA claim and then filing the suit in federal court." *Id.*  The Ninth Circuit explained that, as a result, "the procedural strictures that California put in place have been

6

rendered largely toothless, because they can now be readily evaded." *Id.* at 1213. "[R]etention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms," thus running afoul of federal-state comity principles. *Id.* In *Arroyo*, the Ninth Circuit held that this subversion of California policy underlying its reforms to the Unruh Act was "exceptional in any meaningful sense of the term." *Id.*; *see Vo v. Choi*, 49 F.4th 1167, 1171 (9th Cir. 2022) ("The same underlying legal dynamics that constituted exceptional circumstances in *Arroyo* are equally present here . . . we cannot stray from *Arroyo*'s conclusion that the first prong of the 1367(c)(4) inquiry is met.") (internal quotations omitted).

Mr. Varin argues that, under *Arroyo* and *Vo*, the Court must find that "exceptional circumstances" exist and decline supplemental jurisdiction. ECF No. 36 at 4. He concedes that "Plaintiff here appears to be a non-high-frequency litigant," but argues that, following *Vo*, the Ninth Circuit's concerns regarding comity apply whether or not a plaintiff is a high-frequency litigant. *Id.* at 4, 6. The Court disagrees with Mr. Varin's reading of *Vo*, and finds that in light of Mr. Varin's concession that Plaintiff is not a high-frequency litigant, there are not "exceptional circumstances" that warrant declining supplemental jurisdiction.

In *Vo*, the plaintiff argued that "she is not a high-frequency litigant and therefore is not subject to some of California's heightened pleading requirements." 49 F.4th at 1173. The Ninth Circuit rejected this argument, reasoning that "[f]orcing the district court to determine" whether Ms. Vo was or was not a high-frequency litigant ran afoul of comity principles, and such principles discourage "[n]eedless decisions of state law." *Id.* at 1173-74 (internal quotations omitted). It explained that if district courts were required to adjudicate threshold matters—such as whether a plaintiff was a high-frequency litigant—"it will 'deprive the state courts of their critical role in effectuating the policies underlying those reforms.'" *Id.* at 1174 (quoting *Arroyo*, 19 F.4th at 1213). Here, both sides recognize that Plaintiff is *not* a high-frequency litigant. ECF Nos. 36 at 6, 38 at 6. The comity concerns at issue in *Vo* are not implicated here. As there is no dispute that Plaintiff is not a high-frequency litigant, "[e]xercising supplemental jurisdiction over the Unruh

7

United States District Court
Northern District of California

Act claim would not let" Plaintiff "evade special state procedural rules" under the 2015 Unruh Act amendments, as those procedures only apply to high-frequency litigants. *Jimenez v. R Inn Napa Inc.*, No. 22-cv-07790, 2023 WL 6149889, at *2 (N.D. Cal. Sept. 20, 2023). Following Judge Corley in *Chapman v. Inn at Schoolhouse Creek in Little River*, the Court concludes that Mr. Varin has not shown the existence of exceptional circumstances that warrant dismissing the state claims." No. 23-cv-04420, 2023 WL 8587627, at *4 (N.D. Cal. Dec. 8, 2023); *but see Truong v. RH-Lambert/Brea Assocs., L.P.*, No. 22-cv-01050, 2023 WL 3432251, at *4 (C.D. Cal. Feb. 13, 2023) (explaining that *Vo* rejected the argument that district courts should exercise jurisdiction where the plaintiff claims they are not high-frequency litigants). Here, as in *Chapman*, because Mr. Varin "does not contend Plaintiff is a high-frequency litigant"—and in fact acknowledges that he is not one—Mr. Varin "has not shown how exercising supplemental jurisdiction over the state law claims would allow Plaintiff to evade special state procedural rules which apply construction-related accessibility claims brought by high frequency litigants." *Chapman*, 2023 WL 8587627, at *4; *see Arroyo*, 19 F.4th at 1207, 1211 (explaining that the Unruh Act was reformed to address "the concern that high-frequency litigants may be using the statute to obtain monetary relief for themselves without accompanying adjustments to locations to assure accessibility to others").

As the Court determines that Mr. Varin has not shown there are "exceptional circumstances" that would warrant declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), the Court does not reach the issue of whether there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The Court notes that Plaintiff proceeding with his Unruh Act claim in federal court does not let him "evade California's procedural requirements" that apply to serial filers, and thus does not raise the same concerns regarding comity and fairness at issue in cases with high-frequency litigants. *Vo*, 49 F.4th at 1171. Mr. Varin's motion to dismiss is accordingly DENIED.

**IT IS SO ORDERED.**

Dated: April 27, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge

8